IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| LONGENO MACK, | ) | Civil Action No.: 4:08-cv-01428-HMH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | |
| | ) | REPORT AND RECOMMENDATION |
| THOMAS BYRNE, M.D.; | ) | |
| SOUTH CAROLINA DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The *pro se* plaintiff filed this action under 42 U.S.C. § 1983[1] on April 9, 2008. Plaintiff

alleges that his constitutional rights were violated due to medical indifference while an inmate at

Allendale Correctional Institution. Plaintiff is currently incarcerated at Stevenson Correctional

Institution. Defendants filed a Motion for Summary Judgment on July 22, 2008. The undersigned

issued an order filed July 23, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975),

advising plaintiff of the Motion for Summary Judgment procedure and the possible consequences

if he failed to respond adequately. Plaintiff filed a response on September 29, 2008, and defendants

filed a reply on October 2, 2008.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because
this is a dispositive motion, the report and recommendation is entered for review by the District
Judge.

# I.  DISCUSSION

## A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges that his constitutional rights were violated due to a deliberate indifference to his medical needs. Plaintiff asserts that defendant Byrne was deliberately indifferent to his "serious medical need where he knew of the problem but intentionally chose to ignore it." (Complaint, p. 4b). Further, plaintiff asserts that "defendant SCDC, through Dr. Thomas Byrne, was negligent and grossly negligent where the SCDC breached its duty of care toward the Plaintiff by intentionally failing to render medical care appropriate under the circumstances." (Complaint, p. 4c).

Plaintiff seeks actual and punitive damages against defendant Byrne in the amount of $500,000.00 and "damages against the SCDC up to the limits of the South Carolina Tort Claim Act." (Complaint, p. 5).

Defendants have filed a motion for summary judgment asserting that: (1) plaintiff cannot adduce facts sufficient to constitute a cause of action under 42 USC §1983 against any of these defendants for violation of any constitutional right; (2) plaintiff's medical care within the South Carolina Department of Corrections, specifically by defendant Byrne, was appropriate and within the standard of care; (3) no defendant was deliberately indifferent to any known serious medical need of the plaintiff; (4) plaintiff cannot support his cause of action against these defendants with expert testimony and is required to do so; (5) neither defendant engaged in any conduct which constituted a violation of defendant's constitutional rights; (6) defendants cannot be held liable under theories of vicarious liability; and (7) defendants are entitled to qualified immunity.

## B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements

of his case with respect to which he has the burden of proof.  <u>Celotex</u>, 477 U.S. at 322-323.

## C.  MEDICAL INDIFFERENCE

As previously discussed, plaintiff asserts that defendants were deliberately indifferent to his medical needs. Specifically, plaintiff alleges the following, quoted verbatim:

> On April 24, 2007, the plaintiff signed the sick call list at the Allendale, C.I. due to pain and inflammation in his right arm.

> The location of the inflammation and pain was near an old gunshot wound which had fully healed.

> The plaintiff was seen in medical at Allendale C.I. on April 25, 2007. At that time, Plaintiff was given ibuprofen for pain and an ace bandage in an attempt to reduce the swelling. Dr. Byrne approved a schedule for x-rays of the arm.

> Between April 25, 2007 and April 30, 2007, Plaintiff made numerous complaints to Allendale C.I. staff and officers about the pain and swelling in his arm. He was seen in medical several times but no treatment other than receipt of more ibuprofen was offered.

> Plaintiff was informed by a nurse at medical between April 25, 2007, and April 30, 2007 that he had a severe infection and needed emergency treatment but that he could not override the doctor.

> On April 30, 2007, the Plaintiff was transported to Kirkland C.I. for x-rays. After returning to Allendale C.I., Dr. Byrne informed the plaintiff that the x-ray did not show anything that would cause swelling and pain, During this follow-up, Dr. Byrne told Plaintiff that there was obviously a problem but based on the x-ray, he could not recommend further treatment. The Plaintiff was given more ibuprofen.

> Plaintiff continued to complain about pain to officers and returned to medical several times between April 30, 2007 and May 2, 2007. Plaintiff on one occasion asked Dr. Byrne to please send him to an emergency room which was refused. Plaintiff was given only ibuprofen for pain.

> Plaintiff had his girlfriend call administration at Allendale C.I. and at SCDC headquarters in Columbia, South Carolina to complain about the lack of medical care Plaintiff was receiving.

On May 2, 2007, the Plaintiff was seen in medical by Dr. Byrne. Dr. Byrne asked him why he had someone call from outside the prison. The Plaintiff told him that it was due to the lack of medical care. The Plaintiff was placed in the holding cell in the administration area of the institution at about 2:30 PM, May 2, 2007.

Plaintiff was left in the holding cell with no running water, no mattress or blanket, and only irregular bathroom use from 2:30 PM on May 2, 2007, until about 4:30 PM on May 3, 2007. During this time, Plaintiff was in extreme pain.

Upon information and belief, Plaintiff's complaints to Allendale C.I. administration staff as they passed the holding cell resulted in him being taken to the emergency room at Palmetto-Richland Hospital in Columbia, South Carolina. This occurred at about 4:30 PM on May 3, 2007.

Plaintiff required surgery on his arm and was diagnosed with Methycillan Resistant Staphyloccocus Aureas (MRSA), a serious bacterial infection. Plaintiff remained at Palmetto-Richland Hospital for about a week following surgery. The plaintiff was given intravenous antibiotics to fight the infection.

Around May 10, 2007, the Plaintiff was transferred to the SCDC infirmary at Kirkland C.I. where the antibiotic treatment was continued. The plaintiff remained at Kirkland C.I. for about six (6) weeks before being returned to Allendale C.I.

Since the incident, the Plaintiff suffers from limited mobility of his fingers and lack of feeling in his hand.

(Complaint).

Defendants filed a motion for summary judgment along with a memorandum, an affidavit from Dr. Thomas E. Byrne, and copies of plaintiff's medical records. Defendants argue that the medical records and the affidavit of Dr. Byrne reveal that plaintiff received care which is much better than merely reasonable care.

Prior to his incarceration, plaintiff sustained a gunshot wound around 1990 which resulted in an impairment to his right elbow.  Plaintiff entered SCDC custody in May 2005 and has had limited mobility of his elbow with it chronically flexed, and cannot be fully extended. (Byrne's affidavit, p. 1; medical encounter 34). Plaintiff came to medical on April 25, 2007, where he was

5

seen by a nurse for swelling and redness to his right elbow below the scar area. The medical records note that plaintiff stated he had done pull-ups on a bar on the recreation field before the elbow began to swell that night. (Id). Plaintiff was given Motrin for pain and inflammation and a sling. Plaintiff was scheduled to see Dr. Byrne the next day. (Id).  Plaintiff was seen by Dr. Byrne on April 26, 2007, with a painful elbow. Dr. Byrne prescribed Tylenol #3 and ordered an x-ray, which was scheduled for May 2, 2007. (Byrne affidavit, medical encounter 35). On April 27, 2007, plaintiff was seen by Dr. Byrne who prescribed Naproxen and Tylenol #3 as before, plus Nubain, a narcotic pain injection, to be administered then and every twelve hours until Monday, April 30, 3007, with a plan to see an orthopaedic specialist depending on the results of the x-ray. The x-ray appointment was changed from May 2 to April 30, 2007. (Dr. Byrne's affidavit and medical encounter #38). Plaintiff was x-rayed on Monday, April 30, 2007, which revealed old bony fragments from his gunshot wound. Plaintiff was seen in the orthopaedic clinic on April 30, 2007, was provided a sling and scheduled for followup in two weeks. (See medical encounters 40 and 41). On May 1, 2007, plaintiff was seen in medical by Dr. Byrne complaining of worsened pain and swelling and was found to have an elevated temperature of 101.5. (Dr. Byrne's affidavit and Medical encounter 42). Dr. Byrne called the orthopaedist that saw plaintiff the day before who suggested giving plaintiff antibiotics for "possible cellulitus/soteomylitis which can occur in these injuries." (See medical encounter 42). Dr. Byrne ordered an antibiotic injection and antibiotic pills, continued him on Tylenol #3 and Nubain injections for pain. (Dr. Byrne's affidavit and medical Encounters 42 and 43). On May 2, 2007, Dr. Byrne again saw plaintiff and his temperature was lower but plaintiff stated the swelling was worse. Plaintiff was given an injection but demanded to be sent to the emergency room. (Dr. Byrne's affidavit, medical encounter 44). The medical records note that a female called alleging to be

6

plaintiff's girlfriend stating plaintiff had called her unhappy with his care and that he wanted to go to the emergency room. (See medical encounter 45). Security later contacted Dr. Byrne stating that plaintiff had been placed in a holding cell after causing a disturbance in the dorm and demanding outside medical care. Dr. Byrne attests that he knew the local emergency room would not have an orthopaedic specialist available and plaintiff had just been seen in the orthopaedic clinic and was being treated with antibiotics and pain medications. Dr. Byrne asserts that he tried to contact the orthopedic physician but the office was closed. (Dr. Byrne's affidavit). Dr. Byrne attests that he saw plaintiff on May 3, 3007, and his condition was no worse and had possibly improved. Dr. Byrne attests that he called the orthopedic resident from the clinic group who suggested continuing the antibiotic and sending him to their clinic on Monday, May 7, 2007. In the alternative, the orthopedic resident stated that plaintiff could be sent to the Palmetto Richland Hospital Emergency Room to be seen by the on-call orthopaedic physician. Dr. Byrne did order the continuation of the medications and discussed with plaintiff that he would send him to the Palmetto Richland Emergency Room. On May 3, 2007, at noon, plaintiff refused to take his antibiotic and pain medication. (See medical encounter 50). Arrangements were made to send plaintiff to the emergency room at Palmetto Richland on May 3, 2007. (Id).

The medical report from Palmetto Health Richland reveals that plaintiff was admitted on May 3, 2007, with increasing pain, redness and swelling of the right elbow. Plaintiff was admitted for IV antibiotics and incision and debridement of the right elbow and cultures later grew out methicillin sensitive (not resistant) staph aureus. (See discharge summary for Palmetto Health Richland and Dr. Byrne's affidavit). Plaintiff remained hospitalized through May 10, 2007, and was then discharged to Kirkland Correctional Institution infirmary, and then back to Allendale Correctional Institution

on June 19, 2007. (Id.). Dr. Byrne attests that plaintiff has made no arm-related complaints to the medical staff since June 28, 2007, and he has no information to indicate that the impairment to plaintiff's arm is now any worse than it was before his first complaint on April 25, 2007. Dr. Byrne attests that he did not deviate from the standard of care in his assessment and treatment of plaintiff, nor did he deprive him of adequate medical care. (Dr. Byrne's affidavit).

Defendants argue that even in the outside world, it is impossible to guarantee quick and perfect results in medical treatment because some conditions are persistent and difficult to treat, even with specialist providing care. Defendants argue that plaintiff was provided quality medical care in the institution, at the specialty clinic, and at an outside hospital, including diagnostic examinations, pain medications, anti-inflammatory medications, imaging, antibiotics, and surgery. Defendants assert that the mere failure to treat all medical problems to a prisoner's satisfaction, even if actual medical malpractice is involved, is insufficient to support a claim under §1983. Furthermore, defendants assert that even if this were a case of medical negligence, plaintiff would be required to provide expert testimony to establish the standard of care, breach of that standard, harm, proximate causation, and damages.

In his response in opposition to summary judgment, plaintiff asserts that "had Defendant Byrne and the Department of Corrections medical staff taken the time and effort to treat the infection the Plaintiff was suffering from when he first complained about it, would he have to had to suffer with the pain and swelling and endured a surgery on his arm? That is a question for a jury to answer." (Doc. #27).

The undersigned finds that the plaintiff fails to show that defendants were deliberately indifferent to his medical needs. In the case of  Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme

8

Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be

so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.  Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra.  Negligence, in general, is not actionable under 42 U.S.C. § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94  (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying  Daniels vs. Williams  and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart

10

v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

The plaintiff has failed to show that he was denied medical treatment. Plaintiff was seen in medical almost on a daily basis from the time he began complaining of his elbow, he was sent for x-rays, was sent to the orthopaedic clinic, was prescribed pain medication and antibiotics, and sent to the emergency room at Palmetto Health Richland. As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Additionally, plaintiff has failed to show that he had a serious medical need of which defendant knew about and consciously ignored. Plaintiff has not shown that any conduct by this defendant "shocks the conscious" as required by Miltier v. Beorn, supra.  "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action.  Russell v.Sheffer, supra.

Thus, although plaintiff did not agree with the type of treatment or the timing of treatment he received, the fact is plaintiff was provided treatment. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983.  Negligence, in general, is

not actionable under 42 U.S.C. § 1983. If this claim could be construed as asserting medical malpractice, it must also fail. Medical malpractice is not actionable under 42 U.S.C. § 1983. *See* Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In addition, plaintiff has failed to provide any expert testimony to show that any actions of defendant did not conform to the applicable standard of care, much less, indifference to his serious medical needs.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. For the above stated reasons, summary judgment should be granted in favor of defendants on this issue.

### D. QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the

12

> need for government officials to act decisively without undue fear of
> judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are
> shielded from liability for civil damages insofar as their conduct does
> not violate clearly established statutory or constitutional rights of
> which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for
> civil monetary damages if the officer's "conduct does not violate
> clearly established statutory or constitutional rights of which a
> reasonable person would have known." "In determining whether the
> specific right allegedly violated was 'clearly established,' the proper
> focus is not upon the right at its most general or abstract level, but at
> the level of its application to the specific conduct being challenged."
> Moreover, "the manner in which this [clearly established] right
> applies to the actions of the official must also be apparent." As such,
> if there is a "legitimate question" as to whether an official's conduct
> constitutes a constitutional violation, the official is entitled to
> qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

### E.  SCDC

Defendants argue that the South Carolina Department of Corrections ("SCDC") is a state agency and is not a "person" subject to suit for money damages under 42 USC §1983. The undersigned agrees.

The South Carolina Department of Corrections is immune from suit under the Eleventh Amendment of the United States Constitution. The Eleventh Amendment divests this court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts, such as a State agency or department. The Eleventh Amendment provides: "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State or by citizens or subjects of any foreign State." Fleming v. South Carolina Dept. of Corrections, 2007 WL 2351005 (D.S.C. August 14, 2007). In enacting §1983, Congress did not intend to override the doctrine of States' sovereign immunity found in the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58, 67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Accordingly, it is recommended that defendants' motion for summary judgment be granted with respect to this issue.

### F.  RESPONDEAT SUPERIOR

Defendants assert that plaintiff does not allege any liability on the part of SCDC, except to say it acted "through Dr. Thomas Byrne." Defendants argue that neither SCDC nor Dr. Byrne can be held liable in this action, as respondeat superior and other theories of vicarious liability are not applicable to an action under §1983. Likewise, defendants contend that Dr. Byrne cannot be held liable for the acts or omissions of other person within the SCDC. Thus, while plaintiff alleges he was

14

placed in a holding cell, defendants argue that, even if that placement was improper which they deny, he cannot hold SCDC or Dr. Byrne liable for that act in that there is no evidence that Dr. Byrne played any role in the holding cell use and there is no allegation nor evidence that SCDC's policies or procedures caused the placement.

Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).  The employer or supervisor may only be held liable if the plaintiff can show that they had actual knowledge of the specific danger, but were deliberately indifferent to the plaintiff's needs despite their knowledge of this danger, Slakan v. Porter, 737 F. 2d 368 (4th Cir. 1984).

In a §1983 action, a supervisor is not liable for the acts of an employee, absent an official policy or custom which result in illegal action.  Monell, supra.  Supervisory liability requires that supervisory officials failed promptly to provide an inmate with needed medical care, deliberately interfered with a prison doctor's performance, tacitly authorized or were indifferent to prison physician's constitutional violation. Milter v. Beon, 896 F.2d 848 (4th Cir. 1990).

Defendant SCDC cannot be held liable under a respondeat superior theory under Title 42, U.S.C. § 1983 for the acts of a subordinate employee.  Monell, supra.  Additionally, there is no evidence that SCDC or Dr. Byrne was personally involved in the allegations as to being placed in a holding cell.[2] Plaintiff has not established wrongful conduct directly and personally by these

_____

[2] In the complaint, plaintiff alleges that he told Dr. Byrne that he had someone from outside the prison call due to the lack of medical care. Plaintiff also alleges that he was placed in the holding cell in the administration area of the institution. However, plaintiff does not allege

defendants. Thus, it is recommended that all allegations against defendants be dismissed on this theory.

## G. PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## II. CONCLUSION

Based on the above reasoning, it is RECOMMENDED that defendants' motion for summary judgment (document #16) be GRANTED and this claim dismissed.

---

that Dr. Byrne had any part of the decision to place him in the holding cell or that he was placed in the holding cell at Dr. Byrne's direction. (See complaint p. 4a). A review of the medical records reveals that plaintiff was sent to medical by security on May 2, 2007, and that it was "discussed with security in dorm" that plaintiff was "sent to holding cell after causing problems in dorm-reportedly telling other inmates that medical is not doing anything for his elbow. . . wants to be sent to local ER." (Encounter 46). Regardless, even if it could be found that the allegations suffice as circumstantial evidence that he was placed in the holding cell from 2:30 PM on May 2, 2007, to 4:30 PM on May 3, 2007, at the direction of Dr. Byrne, plaintiff has failed to show a constitutional violation in that the alleged conditions do not rise to the level of a deprivation of a basic human need and failed to show evidence of more than de minimis pain or injury resulting from being placed in the holding cell.

Respectfully Submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 20, 2008
Florence, South Carolina


**The parties' attention is directed to the important notice on the next page.**